UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MELLISSA L. SHIRLEY,

       Plaintiff,

v.                          CASE No.  8:05-CV-925-T-TGW

JO ANNE B. BARNHART,
Commissioner of Social Security,

       Defendant.

_____

O R D E R

       The plaintiff in this case seeks judicial review of the denial of her claims for Social Security disability benefits and supplemental security income payments.[*] Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain reversible error, it will be affirmed.

I.

       The plaintiff, who was forty-seven years old at the time of the administrative hearing and who has a high school education (Tr. 64, 307), has

_____

[*]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 13).

worked at various jobs, including a training supervisor for a telemarketing company, a preschool teacher, and a medical assistant/manager in a doctor's office (Tr. 71). She filed claims for Social Security disability benefits and supplemental security income payments, alleging that she became disabled due to migraines, blurred vision, sleepless nights, and pain in her head, neck, arm, shoulder, lower back and leg (Tr. 58). The claims were denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of degenerative disc disease, left cubital tunnel syndrome, fibromyalgia, carpal tunnel syndrome, adjustment disorder, cervical and lumbar strain with herniated nucleus pulposus (of the cervical spine) (Tr. 19). He concluded that these impairments restricted the plaintiff to a limited range of light work with an option to sit, stand or walk up to ten feet from her work station at her sole discretion (Tr. 21). The plaintiff also cannot climb a ladder, rope or scaffold and must not be subject to concentrated exposure to moving machinery, unprotected heights, vibrations or extreme cold (id.). He also included the restrictions of performing simple repetitive tasks with minimal stress that required only concentration for up to two hours at a time followed

by at least a five minute period in which the plaintiff's concentration requirements were reduced (id.). These limitations precluded the plaintiff from engaging in her past relevant work (id.). However, the law judge determined, based on the testimony of the vocational expert, that there were jobs in the national economy that the plaintiff could perform, such as a garment sorter, hand packager, and telephone survey worker (id.). Accordingly, the law judge decided that the plaintiff was not disabled (Tr. 22). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence.  42 U.S.C. 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.  Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.  Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met.  Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff was involved in a motor vehicle accident on August 3, 2001, in which she received substantial injuries. The law judge, accordingly, found that the plaintiff suffers from a number of severe impairments. He concluded further that the impairments restricted the plaintiff to a limited range of light work. Thus, he found that the plaintiff could only perform light work that permitted an option of sit/stand/walk pursuant to which the plaintiff at her discretion could walk up to ten feet from her work station; that did not involve climbing a ladder, rope, or scaffold; and that did not have concentrated exposure to moving machinery, unprotected heights, vibrations or extreme cold (Tr. 22). In addition, the law judge found that, mentally, the plaintiff was limited to simple repetitive tasks involving only minimal stress and requiring concentration for no more than two hours without at least a five minute break in concentration (id.).

The plaintiff argues that the law judge's determination of her residual functional capacity is not based on substantial evidence (Doc. 10, pp. 8-17). In this connection, the plaintiff contends an individual's residual functional capacity is a medical assessment and that the law judge did not base his finding of residual functional capacity on any medical assessments.

The plaintiff's argument on this point seems to misperceive the role of the law judge in determining residual functional capacity. The responsibility for making that finding is, at this level, assigned to the law judge, who evaluates the evidence before him. 20 C.F.R. 404.1546, 416.946. Thus, it has been explained that a determination of residual functional capacity is an administrative assessment based upon all of the relevant evidence in the case record. See Social Security Ruling, SSR 96-8p, 1996 WL 374184 (S.S.A.).

The plaintiff asserts that the law judge here apparently did his own residual functional capacity evaluation without the aid of a medical assessment (Doc. 10, p. 10). If the plaintiff means to suggest by this that a law judge cannot make a residual functional capacity assessment unless there are such assessments from medical doctors in the record, that contention is both unsupported by any legal authority and inconsistent with the law judge's role in the fact-finding process.

Moreover, the record in this case did contain two physical residual functional capacity assessments from medical doctors (Tr. 204-11; 228-35). Although, as the plaintiff notes, those assessments were from non-examining reviewing physicians, under the regulations such doctors are

considered highly qualified physicians who are also experts in Social Security disability evaluations.  20 C.F.R. 404.1527(f)(2)(*i*), 416.927(f)(2)(*i*).  In the absence of assessments from treating or examining physicians, assessments from non-examining reviewing physicians, considered along with the record as a whole, can be given great weight.  Ogranaja v. Commissioner of Social Security, 2006 WL 1526062 at *3 (11th Cir. 2006) (unpub. dec.).

Here, the law judge did not say that he was giving great weight to the assessments of the non-examining reviewing physicians and, in fact, deviated some from their assessments by, for example, imposing a sit/stand/walk option.  Nevertheless, the physicians' assessments that the plaintiff can perform light work provide medical opinions supporting the law judge's determination of the plaintiff's residual functional capacity.

The medical opinions are particularly noteworthy in light of the lack of a residual functional capacity assessment from a treating or examining physician.  The plaintiff was treated after the accident by Dr. Lawrence E. Shepard.  On November 27, 2001, Dr. Shepard discharged the plaintiff as having reached maximum medical improvement.  He did not set forth any functional limitations, but did opine, inconsistent with a claim of total

disability, that the plaintiff had an impairment of 20% of the whole person (Tr. 141).

The plaintiff was subsequently seen by Dr. Pier D. Frank, a primary care physician. There was no opinion from Dr. Frank regarding the plaintiff's residual functional capacity in the record before the law judge. A handwritten note from Dr. Frank was submitted to the Appeals Council, stating that the plaintiff "is incapacitated to do the majority of daily activities secondary to her pain and medical condition" (Tr. 261). This note, however, cannot be considered in determining whether the law judge's decision is supported by substantial evidence. Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998), cert. denied, 525 U.S. 1124 (1999). Moreover, while evidence that was first submitted to the Appeals Council can be the basis for a remand pursuant to the sixth sentence of 42 U.S.C. 405(g) upon a proper showing (id.), no such request for a remand was made here (and obviously the required showing was not attempted).

In sum, the only evaluations of the plaintiff's functional capacity in the record before the law judge came from the two non-examining reviewing physicians. Accordingly, those evaluations, in light of the medical

evidence, adequately support the law judge's finding of the plaintiff's residual functional capacity.

As a second part of her challenge to the law judge's determination of residual functional capacity, the plaintiff attacks the hypothetical questions asked of a vocational expert. This contention is somewhat off target since the vocational expert's testimony was not used to determine the plaintiff's residual functional capacity, but whether a person with such a capacity could perform work that exists in the national economy.

In all events, the testimony elicited from the expert on the hypothetical questions was not flawed, as the plaintiff asserts. The only relevant question was the first one because it was that question which matched the residual functional capacity that the law judge found to exist. Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1161 (11th Cir. 2004).

The plaintiff challenges that hypothetical question on the ground that the expert considered jobs that permitted a break in concentration every three hours, whereas the law judge found that the plaintiff needed a break in concentration every two hours. An examination of the following pertinent testimony shows that this contention lacks merit (Tr. 332-35) (interruption and extraneous comments excluded):

Q ... I want you to consider some hypotheticals. I want you to assume an individual the same age as Ms. Shirley with the same educational background and work experience having a residual functional capacity for a limited range of light work.  Assume further that this individual is limited as follows. The individual requires a sit/stand option excerisable [sic] at his or her discretion.  Included in that option is the right to take a few steps in any direction away from the work station but not more than 10 feet away from the work station.  The individual can never be required to climb a ladder, rope, or scaffold.  He or she should have no concentrated exposure to moving machinery, unprotected heights, vibrations, or extreme cold. The individual can only perform simple repetitive tasks.  Can only tolerate minimal stress and is unable to concentrate for more than two hours at a time....

. . .

Q   The individual has an inability to concentrate for more than two hours at a time. Anything that I need to go over there again?

A   I got the simple routine repetitive, concentrate two hours at a time, okay.  No, I think that'll be it.

Q  Could that individual perform any of Ms. Shirley's past relevant work?

A No, Your Honor.

Q  Could that individual perform other work that exists in the national economy? ...

. . .

Q   ... Mr. Freeman, have you had an opportunity to consider my last question which was whether the hypothetical individual I described to you could perform work that exists in the national economy?

A   Yes, Your Honor.  If it were not for the last addition to the hypothetical I would be able to provide you with several job opportunities within the light, unskilled, sit/stand option.   However, because the limitation of concentration with two hour limits you're basically asking me for a two hour job and so my answer to that would be, no, I would not be able to –

Q Well, I'm not asking you for a two job (sic).  I'm asking –

A Well –

Q –  you for jobs where the individual who was performing the job cannot concentrate for more than two hours at a time and then requires somewhat of a break, either a reduction in concentration requirements for a few minutes or a break. I would think that in most jobs breaks are taken after a certain period of time.

A Breaks are taken usually at two, maybe three hour intervals.  And if we look at it that way, yes, garment sorter

Q Garment sorter?

A Yeah, g-a-r-m-e-n-t sorter –

Q Uh-hum.

A I'm using the DOT of 222687014.  This is considered light exertional, unskilled, SVP of two. The incidents on that locally in the Tampa Bay area are approximately 115.  In the Florida economy approximately 600 and in the U.S.A. economy approximately 12,000.  Another position which would fall [into] that category of also light, unskilled, SVP of two is a hand packager.  DOT on that is 559687074.  The incidents on that locally are approximately 300, in the Florida economy approximately 1800 and nationally approximately 50,000.  Another one would be that of a survey worker specifically telephone survey worker.  This is also considered light, unskilled, entry level, SVP of two, sit/stand option.  The DOT I'm using on that is 205367054.  The incidents on that locally are approximately 550.   In the Florida economy approximately 3300.   In the U.S.A. economy approximately 66,000.

Consistent with the law judge's subsequent determination that the plaintiff needed a break in concentration every two hours, the operative hypothetical question clearly included such a restriction.  The only mention of three hours was by the vocational expert in response to the law judge's comment that "in most jobs breaks are taken after a certain period of time" (Tr. 335).  The hypothetical question was never modified to include a "break every three hours" and there is no indication that the expert misunderstood the question to have been so modified.  Consequently, the vocational expert's

testimony in answer to the hypothetical question provides substantial evidence supporting the finding that jobs exist in the national economy that the plaintiff can perform.

In her second issue, the plaintiff argues that the hypothetical question is deficient because it does not consider several of the plaintiff's impairments. The law judge, however, addressed those impairments as follows (Tr. 20):

> The medical evidence also reveals that the claimant has symptoms of degenerative disc disease, left cubital tunnel syndrome, fibromyalgia, carpal tunnel syndrome, adjustment disorder, cervical and lumbar strain with herniated nucleus pulposus (of the cervical spine). However, those symptoms do not cause significant vocational limitations. The mere presence of a medical condition does not mean that an individual is disabled. Rather, the objective medical evidence must show that the impairment imposes significant limitations on the individual's ability to perform basic work. The objective medical evidence in this case does not demonstrate any such limitations. This does not imply that the claimant is symptom-free. However, I find that the claimant's allegations of pain and incapacitation are not credible when viewed in light of the medical evidence.

The law judge is correct in stating that disability is determined, not by the diagnoses of impairments, but by the functional limitations that are

caused by those impairments.  See Davis v. Barnhart, 2005 WL 2510227 at

*3 (11th Cir. 2005) (unpub. dec.).  The law judge concluded, based upon the

medical evidence, that the plaintiff's impairments did not cause any functional

limitations beyond those that he found to exist.  On this issue, the plaintiff has

not pointed to any medical evidence showing the contrary.

        Moreover, as previously indicated, the law judge's hypothetical

question did not need to include any alleged functional limitation that the law

judge has rejected.  Crawford v. Commissioner of Social Security, supra.

Therefore, since the law judge has reasonably rejected any functional

limitations from the additional impairments that the plaintiff has mentioned,

the hypothetical question is not deficient.

        The plaintiff's final contention is that the law judge failed to

comply with the Eleventh Circuit's pain standard.  As the court of appeals

explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain

standard "required evidence of an underlying medical condition and (1)

objective medical evidence that confirms the severity of the alleged pain

arising from that condition or (2) that the objectively determined medical

condition is of such a severity that it can be reasonably expected to give rise

to the alleged pain."

The law judge expressly considered the plaintiff's statements regarding her symptoms and their impact on her ability to work, and concluded that they were not entirely credible (Tr. 20). He specifically addressed the plaintiff's complaints of blurred vision, a neck injury, back pain, headaches, and depression, and reasonably explained why those complaints were not supported by the medical evidence (id.). Further, as previously stated, the law judge reasonably concluded that the medical evidence did not establish that the plaintiff's other impairments imposed any additional functional limitations. While the plaintiff disagrees with the law judge's credibility determination in some respects, she has not pointed to any medical evidence that would compel the law judge to reach a different conclusion.

Moreover, only one of the contentions the plaintiff makes on this issue warrants discussion. The law judge stated with respect to the plaintiff's neck pain (Tr. 20):

> [T]he medical evidence does not support a diagnosis of cervical radiculitis. Indeed, on August 28, 2001 (Exhibit 5F) cervical radiculopathy was ruled out.

The plaintiff argues that on November 27, 2001, Dr. Shepard stated as his last of six assessments that the plaintiff had cervical and lumbar

radiculopathy (Tr. 141). Nevertheless, the law judge found that "the medical evidence does not support a diagnosis of cervical radiculitis" (Tr. 20). Despite Dr. Shepard's assessment, this finding is reasonable. As the law judge pointed out, diagnostic testing ruled out cervical radiculopathy (Tr. 152). Moreover, there does not appear to be anything in the notes of Dr. Shepard's physical examination on November 27, 2001, that establishes cervical radiculopathy (Tr. 146). Consequently, the law judge could reasonably conclude that such a diagnosis was not supported by medical evidence.

In sum, the law judge addressed in some detail the plaintiff's subjective complaints. The plaintiff has failed to show that the law judge's assessment of those subjective complaints is not supported by the evidence or is otherwise unreasonable.

IV.

For the foregoing reasons, the decision of the Commissioner is supported by substantial evidence and does not contain reversible error. Therefore, the Commissioner's decision is hereby AFFIRMED. The Clerk shall enter judgment in accordance with this Order and close this case.

DONE and ORDERED at Tampa, Florida, this 22nd day of August, 2006.

-16-

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE